SO ORDERED.

Dated: June 12, 2017

Daniel P. Collins, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>**KAREN CHOY LAN YEE**,<br><br>Debtor. | Chapter 13 Proceedings<br><br>Case No: 2:16-bk-11798-DPC<br><br>**Order Regarding Fees and Expenses Sought to be Held Nondischargeable Under 11 U.S.C. §523(a)(5)**<br><br>(Not For Publication) |

On April 3, 2017, the Court held that amounts awarded to Martin Yee ("Dr. Yee") by the Arizona Superior Court, Maricopa County ("State Court") were nondischargeable under 11 U.S.C. § 523(a)(5).[1] Now Dr. Yee seeks this Court's order awarding him fees and expenses incurred in these bankruptcy proceedings and declaring that such amounts are also nondischargeable. Because this Court finds there is no legal basis to grant Dr. Yee his fees in these proceedings, the Court denies his fee application. However, the Court does approve Dr. Yee's pre-bankruptcy child support claim of $1,862.76, which claim is nondischargeable. As to Dr. Yee's claims for unreimbursed costs, the Court defers to the State Court on the question of whether the debtor ("Ms. Yee") owes Dr. Yee any unreimbursed child support costs advanced by Dr. Yee. If the State Court determines Dr. Yee does have claims for such costs, those claims will be nondischargeable. Finally, the Court determines that the nondischargeable amounts owed to Dr. Yee accrue interest

---

[1] Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

at the rate identified in A.R.S. § 44-1201(B) up to the date of a judgment to be entered by this Court, and, thereafter, at the rate of interest identified in 28 U.S.C. § 1961(a).[2]

## I. BACKGROUND

1. On June 13, 2016, the State Court entered an Order and Judgment Awarding Father Attorney's Fees and Costs against Debtor awarding Dr. Yee a total of $56,768.08 comprised of attorneys' fees ($55,485.00) and costs ($1,283.08) ("State Court Judgment"). See Exhibit B attached to Dr. Yee's Legal Memorandum (DE[3] 52).

2. On August 10, 2016, the State Court awarded Dr. Yee attorney's fees and costs in the amount of $3,990.00 pursuant to A.R.S. § 25-324 related to the Best Interests Attorney ("BIA") Motion filed by Debtor with the Family Court ("BIA Motion Award"). A copy of the BIA Motion Award is attached to DE 52 as Exhibit "C."

3. Ms. Yee filed her Chapter 13 bankruptcy on October 13, 2016 ("Petition Date").

4. On November 10, 2016, Debtor filed her chapter 13 plan ("Plan") (DE 21).

5. On November 28, 2016, Debtor filed a Motion to Avoid Judicial Lien pursuant to 11 U.S.C. § 522(f) ("Lien Avoidance Motion") (DE 28).

6. On April 3, 2017, the Court heard oral arguments on the question of whether the State Court Judgment and BIA Motion Award were domestic support obligations ("DSO") within the meaning of § 101(14A) of the Bankruptcy Code and thus nondischargeable pursuant to § 523(a)(5). The Court held these amounts were DSOs and, therefore, nondischargeable (DE 76). Further, the Court ordered Dr. Yee to provide an accounting of all additional amounts he asserted were nondischargeable.

7. Dr. Yee filed his accounting ("Accounting") on April 17, 2017 (DE 81).

---

[2] This Order sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

[3] "DE" shall hereafter refer to docket entries in the administrative file in this bankruptcy case.

8. Dr. Yee filed his fee application ("Fee Application") on April 17, 2017 (DE 82). The Fee Application appears to cover all matters Dr. Yee's counsel addressed in connection with Ms. Yee's bankruptcy, including the § 341 first meeting of creditors, the Plan, Lien Avoidance Motion, and § 523 issues.

9. Dr. Yee filed his first supplement ("Supplement") to the Fee Application on April 26, 2017 (DE 89). The Supplement brought to this Court's attention a pleading denoted as Mother's Motion to Clarify ("Motion to Clarify") filed in State Court by Ms. Yee's attorney, Trail Potter ("Potter"). Potter's law firm was approved by this Court (DE 73) as special counsel for Ms. Yee to handle her family law matters in the State Court. Potter's filing of the Motion to Clarify caused this Court to issue an Order to Show Cause hearing for June 12, 2017 at 10:00 a.m. against Potter (DE 101).

10. Ms. Yee filed her objection ("Objection") to the Accounting and Fee Application on May 1, 2017 (DE 91).

11. Dr. Yee filed his reply ("Reply") to the Objection on May 5, 2017 (DE 92).

## II. JURISDICTION

This Court has jurisdiction over the dischargeability issues presented by the parties pursuant to 28 U.S.C. § 157(b)(2)(I).[4]

## III. ISSUES

1. Is there a legal basis for the Court to award the reasonable fees and costs incurred by Dr. Yee in these bankruptcy proceedings?

2. What is the amount of nondischargeable child support owed by Ms. Yee to Dr. Yee?

---

[4] *See*, Dr. Yee's Accounting, page 3, line 7-8.

3. What is the amount of nondischargeable child support cost reimbursement owed by Ms. Yee to Dr. Yee?

4. What are the applicable rates of interest on pre-judgment and post-judgment nondischargeable amounts owed by Ms. Yee to Dr. Yee?

## IV. ANALYSIS

### A. Attorneys' Fees and Costs Sought by Dr. Yee

Dr. Yee seeks an award of fees in the amount of $34,128.50 and costs of $40.98 incurred through April 17, 2017 in connection with his involvement in Ms. Yee's bankruptcy proceedings. He also asks that these fees be recognized as a DSO[5] that would be nondischargeable under § 523(a)(5). Ms. Yee does not challenge the reasonableness of the fees or costs sought by Dr. Yee. Rather, she contends there is no legal basis to award fees or costs against her. Except for Dr. Yee's fees incurred related to his counsel's notice of appearance and time related to Ms. Yee's first meeting of creditors, which amounts total $1,139.00,[6] the Court finds Dr. Yee's fees and costs are reasonable and related to enforcing his DSO claims. However, as to whether there is a legal basis for

---

[5] See § 101(14A) which defines DSO to mean "a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
(A) owed to or recoverable by—
    (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
    (ii) a governmental unit;
(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
    (i) a separation agreement, divorce decree, or property settlement agreement;
    (ii) an order of a court of record; or
    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt."

[6] See Dr. Yee's counsel's time entries from November 21, 2016 to November 23, 2016.

this Court to award legal fees and costs to Dr. Yee in connection with his efforts in these bankruptcy proceedings, the Court agrees with Ms. Yee.

The parties agree, as they must, that under the "American Rule" a litigant in federal court is not entitled to an award of attorneys' fees and costs unless an applicable statute or enforceable contract provides for such award. *Travelers Casualty & Surety Company of America v. Pacific Gas and Electric Company*, 549 U.S. 443, 448, 127 S. Ct. 1199 (2007). Neither party contends there exists a contract which so provides. Moreover, the Bankruptcy Code does not provide a general right to recover fees. *Heritage Ford v. Baroff (In Re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Neither does § 523(a)(5) provide a statutory right to fees. However, as the 9th Circuit indicated in *Baroff*, "a prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Id.*

Dr. Yee argues that Arizona's family law statutes stand as the basis for an award of his fees and costs against Ms. Yee. Dr. Yee points to A.R.S. §§ 25-324(A) and (B) which state:

> A. The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under this chapter or chapter 4, article 1 of this title. On request of a party or another court of competent jurisdiction, the court shall make specific findings concerning the portions of any award of fees and expenses that are based on consideration of financial resources and that are based on consideration of reasonableness of positions. The court may make these findings before, during or after the issuance of a fee award.
>
> B. If the court determines that a party filed a petition under one of the following circumstances, the court shall award reasonable costs and attorney fees to the other party:
> 1. The petition was not filed in good faith.
> 2. The petition was not grounded in fact or based on law.
> 3. The petition was filed for an improper purpose, such as to harass the other party, to cause an unnecessary delay or to increase the cost of litigation to the other party.

Section 25-324 is found in chapter 3 ("Dissolution of Marriage") of title 25 ("Marriage and Domestic Relations") of the Arizona Revised Statutes. Article 1 of chapter 4 of title 25 covers "Legal Decision-Making and Parenting Time."

Ms. Yee contends these Arizona family law statutes do not supply a basis to award Dr. Yee fees incurred in her bankruptcy proceeding, even though such fees are related to Dr. Yee's efforts to protect and enforce the State Court's orders which constitute DSOs within the meaning of § 101(14A) of the Bankruptcy Code.

Under the plain language of § 25-324(A), "[t]he court…may order a party to pay a reasonable amount to the other party for the costs and expenses of <u>maintaining or defending any proceeding under this chapter or chapter 4, article 1 of this title</u>". (Emphasis supplied). Dr. Yee's extensive and important efforts in the bankruptcy court were designed "to protect and enforce the valid DSO granted to him by the [State] Court."[7] However, Dr. Yee's efforts do not satisfy § 25-324(A)'s requirements that such efforts constitute "maintaining or defending any proceeding" under Arizona's Dissolution of Marriage statutes (A.R.S. § 25-301 to A.R.S. § 25-381.24) or Arizona's Legal Decision-Making and Parenting Time statutes (A.R.S. § 25-401 to A.R.S. § 25-415). Although "the court" referenced in § 25-324(A) is not limited to only the State Court, the bankruptcy court does not have jurisdiction over marital dissolution proceedings or matters concerning a family's legal decision-making or parenting time issues. "The court" cannot, therefore, mean the bankruptcy court. More importantly, the "proceeding," before this Court, i.e., the question of dischargeability of claims awarded by the State Court, is not a "proceeding" under title 25, chapter 3 or a "proceeding" under Title 25, chapter 4, article 1 of the Arizona Revised Statutes.

---

[7] See the Fee Application, DE 81, page 1, lines 21-22.

Dr. Yee points to bankruptcy cases from Utah and California where courts looked to those states' family law statutes and held that fees incurred in § 523(a)(5) litigation were nondischargeable DSOs. In the case of *In Re Busch*, 369 B.R. 614 (10th Cir. BAP 2007), the Court reviewed Utah Code Ann. § 30-3-3(2) (2006) which states:

> (2) In any action to enforce an order of custody, parent-time, child support, alimony, or division of property in a domestic case, the court may award costs and attorney fees upon determining that the party substantially prevailed upon the claim or defense. The court, in its discretion, may award no fees or limited fees against a party if the court finds the party is impecunious or enters in the record the reason for not awarding fees.

The 10th Circuit BAP held that the claimant's participation in the debtor's chapter 13 cases seeking payment of her claims and litigating the nondischargeability of her claims were "certainly actions in the nature of enforcing the terms of the divorce decree. And no dispute exists regarding who is the prevailing party." *Id.* at 625. See also *In Re Laver*, 2012 WL 3848643 (Bankr. Utah 2012) (citing *Busch*, but without referencing Utah's applicable fee shifting statute, that bankruptcy court held fees incurred in bankruptcy court to enforce a Utah DSO are excepted from discharge but the state court should determine the amount of fees necessarily incurred to enforce the DSO in the bankruptcy proceeding.) Unlike Utah, Arizona's family law statutes do not provide for an award of fees "<u>in any action</u> to enforce an order of … child support." Rather, Arizona's applicable statute allows attorneys' fees to be awarded only in proceedings under chapter 3 or chapter 4, article 1 of Arizona's Marriage and Domestic Relations statutes.

Dr. Yee also cites *In Re Carson*, 510 B.R. 627 (Bankr. E.D.Ca. 2014), for the proposition that reasonable fees incurred in a bankruptcy nondischargeability proceeding are themselves nondischargeable. In *Carson*, Bankruptcy Judge Sargis reviewed California Family Code § 2030 and determined that,

> [t]his section applies not only to a proceeding for dissolution of marriage, nullity of marriage, or legal separation, but in 'any proceeding subsequent to the entry of the related judgment.' [Cal. Fam. §2030(a)] This Adversary

> Proceeding is a proceeding subsequent to the State Court judgment and relates to the enforcement of that State Court judgment.

*Id*. at 633. California's statute specifically provides for a fee award in "any proceeding" subsequent to a family court's judgment which constitutes a DSO. Arizona's family law statutes are not so broad. Again, fee awards under Arizona's statute may only be granted if the proceeding is a proceeding under chapter 3 or chapter 4, article 1 of Arizona's Marriage and Domestic Relations statutes.

Dr. Yee next argues A.R.S. § 25-324(B) provides a statutory basis for an award of fees he incurred in the Bankruptcy Court. Fees are awardable under that statute if a "petition" was (1) filed not in good faith, (2) not grounded in fact or law, or (3) filed for an improper purpose. The term "petition" derives from A.R.S. § 25-311(C) which notes:

> The initial pleading in all proceedings under this chapter and under chapter 4, article 1 of this title shall be denominated a petition. A responsive pleading shall be denominated a response.

Dr. Yee's fees incurred in connection with Ms. Yee's bankruptcy case were not incurred by virtue of a "petition" for dissolution of the Yees' marriage nor a "petition" to address legal decision-making or parenting time. Section 25-324(C) does not aid Dr. Yee's cause.

Although the reasonableness of Dr. Yee's fees and costs incurred in these bankruptcy proceedings are not in question (except as noted on page 4, above), the Court is not free to grant his fee application unless applicable Arizona law permits such an award. Dr. Yee has only directed this Court to A.R.S. §§ 25-324(A) and (B) as providing the statutory bases for such award. While this Court is inclined to believe a fee award in favor of Dr. Yee would be equitable, the U.S. Supreme Court has cautioned bankruptcy courts against exceeding their § 105 equitable powers when the exercise of those powers would run contrary to explicit controlling statutory provisions. *See Law v. Siegel*, 134 S. Ct. 1188 (2014).

B. <u>Past Due Child Support</u>

Although Dr. Yee's Accounting (DE 81, pages 7 and 9) initially sought an award of $3,725.52 in past due child support owed to him by Ms. Yee, his Reply (DE 92, pages 17 and 19) agrees with Ms. Yee's Objection. This Court, therefore, awards Dr. Yee the sum of $1,862.76 plus interest (*See* Section D, Applicable Interest Rates, below) for his unpaid claim for the pre-petition child support owed to him by Ms. Yee. Such amounts are DSOs which are nondischargeable under § 523(a)(5).

C. <u>Reimbursable Child Support Costs</u>

Dr. Yee directs this Court's attention to the State Court's July 31, 2015, Order: Regarding Financial Issues and Child Support ("Stipulated Order")[8] as supplying the basis to his claims for accrued reimbursable child support costs. Without documenting support for his claims, Dr. Yee's Accounting (DE 81) seeks this Court's order determining that such claims total $7,361.75 through April 17, 2017. He further requests that such claims be determined nondischargeable DSOs. Ms. Yee contends these reimbursable costs are in dispute, are subject to set-offs and are subject to appeal. Dr. Yee's Reply (DE 92) attaches 123 pages of documentary support for these claims.

The question of the amount of any claims Dr. Yee holds against Ms. Yee for payment of such unreimbursed child support costs are subject to unresolved factual disputes. The State Court is best equipped to resolve these factual questions as well as any questions concerning interpretations of its Stipulated Order. The Court finds the bankruptcy stay (§ 362 of the Bankruptcy Code) does not stay the State Court's determination of the unreimbursed cost amounts, if any, owed by Ms. Yee to Dr. Yee. Even if § 362 does stay the State Court's determination of such claim amounts, the Court

---

[8] *See* Exhibit 1 attached to DE 81.

hereby terminates all bankruptcy stays so as to afford the State Court and any state appellate court the opportunity to resolve Dr. Yee's claims for unreimbursed child support costs. Once such claims are determined by the Arizona judiciary, they shall become nondischargeable under § 523(a)(5) as DSOs.

### D. Applicable Interest Rates

The 9th Circuit has held that interest on nondischargeable child support obligations is also nondischargeable and such interest continues to accrue after the filing of a Chapter 13 case. *In Re Foster*, 319 F.3d 495, 497 (9th Cir 2003). The Court is then left with the question of the applicable interest rate(s) and the time periods such rates accrue. The 9th Circuit BAP noted that "[i]t is well settled that where a debt that is found to be nondischargeable arose under state law, 'the award of prejudgment interest on that debt is also governed by state law.' *Otto v. Niles (In Re Niles)*, 106 F.3d 1456, 1463 (9th Cir. 1997)." *In re Weinberg*, 410 B.R. 19, 37 (9th Cir. BAP 2009).

#### 1. Pre-judgment Interest

Since the State Court Judgment and BIA Motion Award were determined by this Court to be nondischargeable DSOs and each of those orders were issued by the State Court, the Court must apply one of the interest rates enumerated under state law to the pre-judgment nondischargeable amounts owed to Dr. Yee. Dr. Yee argues that A.R.S. § 25-510(E) supplies the applicable interest rate because the State Court Judgment and BIA Motion Award are for domestic support arrearages. He further argues that since this Court previously determined that both the State Court Judgment and BIA Motion Award are DSOs, interest is properly calculated under A.R.S. § 25-510(E).

Debtor argues that this Court's determination that the State Court Judgment and BIA Motion Award were DSOs was strictly for the limited purpose of determining

whether the debts are nondischargeable DSOs under federal law. Further, this Court's characterization of the State Court Judgment and BIA Motion Award as DSOs does not make them support arrearages under state law so the applicable judgment interest rate is found at A.R.S. § 44-1201.

This Court has already determined the State Court Judgment and BIA Motion Award were in the nature of domestic support as they relate to litigation involving the best interests of the child. *See, In re Rehkow*, No. ADV.04-00936, 2006 WL 6811011, at *3-4 (B.A.P. 9th Cir. Aug. 17, 2006), aff'd, 239 F. App'x 341 (9th Cir. 2007). A.R.S. § 25-500 provides applicable definitions for title 25, chapter 5, Family Support Duties:

> In this chapter, unless the context otherwise requires:
> 1. "Arrearage" means the total unpaid support owed, including child support, past support, spousal maintenance and interest.
>
> 9. "Support" means the provision of maintenance or subsistence and includes medical insurance coverage, or cash medical support, and uncovered medical costs for the child, arrearages, interest on arrearages, past support, interest on past support and reimbursement for expended public assistance. In a title IV-D case, support includes spousal maintenance that is included in the same order that directs child support.

The Court finds that the State Court Judgment and BIA Motion Award are not "support" within the meaning of A.R.S. § 25-500(9). Those two State Court awards were for fees incurred by Dr. Yee. They were not "support" awards. The fact that those awards are DSOs within the meaning of § 101(14A) does not make the awards "support" within the meaning of § 25-500(9). A.R.S. § 44-1201 dictates the proper interest rate percentage applied to both the State Court Judgment and the BIA Motion Award.

A.R.S. § 44-1201(B) states:

> Unless specifically provided for in statute or a different rate is contracted for in writing, interest on any judgment shall be at the lesser of ten per cent per annum or at a rate per annum that is equal to one per cent plus the prime rate as published by the board of governors of the federal reserve system in statistical release H.15 or any publication that may supersede it on the date that the judgment is entered. The judgment shall state the applicable interest rate and it shall not change after it is entered.

1% plus the prime rate today is 5%, which, of course, is lower than 10%. Pre-judgment interest on the nondischargeable judgment shall be 5%.[9]

2. Post-judgment Interest

The final question for this Court to resolve is the appropriate post-judgment interest rate to apply to this Court's yet-to-be-entered nondischargeable judgment. 28 U.S.C. §1 961(a) states:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961(c)(4) states:

> (c)
>   …
>   (4) This section shall not be construed to affect the interest on any judgment of any court not specified in this section.

Since this Court's soon-to-be-entered nondischargeable judgment will be a money judgment in a civil case recovered in a federal court, the Court concludes that interest shall accrue on the judgment at the rate specified in 28 U.S.C. § 1961(a) from the date the Court enters its nondischargeable judgment. This conclusion is consistent with nondischargeable judgments granted in other bankruptcy cases. See, for example, *In Re Levitsky*, 137 B.R. 208 (Bank. E. D. Wisc. 1992) and *In re Brace*, 131 B.R. 612 (Bankr. W.D. Mi. 1991). It is also consistent with 9th Circuit authority, albeit in a factually

---

[9] This rate, per A.R.S. § 44-1201(B), is 1% plus 4.0% (the Fed's prime rate on June 12, 2017). See Exhibit A attached hereto.

dissimilar context. See *In Re Cardelucci*, 285 F.3d 1230, 1235 (9th Cir. 2002) ("It has long been the rule that an award of post-judgment interest is procedural in nature and thereby dictated by federal law").

## V. CONCLUSION

As much as this Court feels it would be equitable to award Dr. Yee his reasonable fees and costs incurred in connection with his efforts in this bankruptcy case, the Court finds no legal basis to do so. However, Dr. Yee is entitled to a judgment entered by this Court declaring nondischargeable the following amounts:

1. $56,768.08 from June 13, 2015, through the date judgment is entered, at the pre-judgment interest rate of 5.0%. This amount pertains to the State Court Judgment.

2. $3,990.00 plus interest from August 10, 2016, through the date judgment is entered, at the pre-judgment interest rate of 5.0%. This amount pertains to the BIA Motion Award.

3. $1,862.76 plus interest from the Petition Date (October 13, 2016) through the date judgment is entered, at the pre-judgment rate of 5.0%. This amount is the agreed upon pre-bankruptcy child support arrears.

4. Any sums declared by the State Court to be owed by Ms. Yee to Dr. Yee as and for accrued unreimbursed child support costs.

All of the above amounts shall accrue interest at the rate described in 28 U.S.C. §1961(a) from the day after judgment is entered, until paid. Counsel for Dr. Yee is hereby directed to lodge a judgment consistent with this Court's order.[10]

**Signed and Dated Above.**

---

[10] Nothing in this Order shall be construed as limiting or in any way impacting on the Order to Show Cause this Court has directed to Potter or any exposure he may face concerning his preparation, filing and supporting his Motion to Clarify.

COPY of the foregoing mailed by the BNC and/or
sent by auto-generated mail to:

Patrick F. Keery
Keery Mccue, PLLC
6803 E Main Street
Suite 1116
Scottsdale, AZ  85251
Attorney for Dr. Yee

Michael A. Jones
Allen Barnes & Jones, PLC
1850 N. Central Ave., Suite 1150
Phoenix, AZ  85004

Russell Brown
3838 North Central Avenue
Suite 800
Phoenix, AZ  85012-1965
Chapter 13 Trustee


By:    Denine Downs   -
       Judicial Assistant

Exhibit A Selected Interest Rates

# Selected Interest Rates (Daily) - H.15

## H.15 Selected Interest Rates     RSS     DDP

The release is posted daily Monday through Friday at 4:15pm. The release is not posted on holidays or in the event that the Board is closed.

Release date: June 9, 2017

Selected Interest Rates

Yields in percent per annum

| Instruments | 2017 Jun 2 | 2017 Jun 5 | 2017 Jun 6 | 2017 Jun 7 | 2017 Jun 8 |
|---|---|---|---|---|---|
| Federal funds (effective) 1 2 3 | 0.91 | 0.91 | 0.91 | 0.91 | 0.91 |
| Commercial Paper 3 4 5 6 | | | | | |
| Nonfinancial | | | | | |
| 1-month | 0.86 | 0.89 | 0.88 | 0.93 | 0.93 |
| 2-month | 0.92 | 0.94 | 0.92 | 0.97 | 0.98 |
| 3-month | 0.98 | 0.99 | 0.97 | 1.02 | 1.03 |
| Financial | | | | | |
| 1-month | 0.95 | 0.96 | 0.95 | 0.96 | 0.96 |
| 2-month | 1.00 | 1.01 | 1.00 | 1.01 | n.a. |
| 3-month | 1.06 | 1.07 | 1.05 | 1.07 | 1.06 |
| Bank prime loan 2 3 7 | 4.00 | 4.00 | 4.00 | 4.00 | 4.00 |
| Discount window primary credit 2 8 | 1.50 | 1.50 | 1.50 | 1.50 | 1.50 |
| U.S. government securities | | | | | |
| Treasury bills (secondary market) 3 4 | | | | | |
| 4-week | 0.80 | 0.80 | 0.82 | 0.82 | 0.78 |
| 3-month | 0.96 | 0.95 | 0.96 | 0.98 | 0.99 |
| 6-month | 1.04 | 1.04 | 1.06 | 1.07 | 1.09 |
| 1-year | 1.13 | 1.13 | 1.13 | 1.14 | 1.16 |
| Treasury constant maturities | | | | | |
| Nominal 9 | | | | | |
| 1-month | 0.82 | 0.83 | 0.83 | 0.84 | 0.80 |
| 3-month | 0.98 | 0.96 | 0.97 | 1.00 | 1.01 |
| 6-month | 1.06 | 1.06 | 1.08 | 1.09 | 1.11 |
| 1-year | 1.16 | 1.16 | 1.16 | 1.17 | 1.19 |
| 2-year | 1.28 | 1.32 | 1.30 | 1.32 | 1.33 |
| 3-year | 1.42 | 1.45 | 1.42 | 1.45 | 1.47 |
| 5-year | 1.71 | 1.74 | 1.71 | 1.74 | 1.75 |
| 7-year | 1.96 | 1.99 | 1.95 | 1.99 | 2.00 |
| 10-year | 2.15 | 2.18 | 2.14 | 2.18 | 2.19 |

| Instruments | 2017 Jun 2 | 2017 Jun 5 | 2017 Jun 6 | 2017 Jun 7 | 2017 Jun 8 |
|---|---|---|---|---|---|
| 20-year | 2.53 | 2.56 | 2.53 | 2.56 | 2.57 |
| 30-year | 2.80 | 2.84 | 2.81 | 2.84 | 2.85 |
| Inflation indexed 10 | | | | | |
| 5-year | -0.01 | 0.02 | 0.00 | 0.05 | 0.06 |
| 7-year | 0.20 | 0.22 | 0.20 | 0.24 | 0.26 |
| 10-year | 0.36 | 0.39 | 0.37 | 0.40 | 0.41 |
| 20-year | 0.68 | 0.72 | 0.70 | 0.73 | 0.74 |
| 30-year | 0.87 | 0.92 | 0.91 | 0.93 | 0.95 |
| Inflation-indexed long-term average 11 | 0.70 | 0.74 | 0.73 | 0.75 | 0.77 |

n.a. Not available.

Footnotes

1. As of March 1, 2016, the daily effective federal funds rate (EFFR) is a volume-weighted median of transaction-level data collected from depository institutions in the Report of Selected Money Market Rates (FR 2420). Prior to March 1, 2016, the EFFR was a volume-weighted mean of rates on brokered trades.

2. Weekly figures are averages of 7 calendar days ending on Wednesday of the current week; monthly figures include each calendar day in the month.

3. Annualized using a 360-day year or bank interest.

4. On a discount basis.

5. Interest rates interpolated from data on certain commercial paper trades settled by The Depository Trust Company. The trades represent sales of commercial paper by dealers or direct issuers to investors (that is, the offer side). The 1-, 2-, and 3-month rates are equivalent to the 30-, 60-, and 90-day dates reported on the Board's Commercial Paper Web page (www.federalreserve.gov/releases/cp/).

6. Financial paper that is insured by the FDIC's Temporary Liquidity Guarantee Program is not excluded from relevant indexes, nor is any financial or nonfinancial commercial paper that may be directly or indirectly affected by one or more of the Federal Reserve's liquidity facilities. Thus the rates published after September 19, 2008, likely reflect the direct or indirect effects of the new temporary programs and, accordingly, likely are not comparable for some purposes to rates published prior to that period.

7. Rate posted by a majority of top 25 (by assets in domestic offices) insured U.S.-chartered commercial banks. Prime is one of several base rates used by banks to price short-term business loans.

8. The rate charged for discounts made and advances extended under the Federal Reserve's primary credit discount window program, which became effective January 9, 2003. This rate replaces that for adjustment credit, which was discontinued after January 8, 2003. For further information, see www.federalreserve.gov/boarddocs/press/bcreg/2002/200210312/default.htm. The rate reported is that for the Federal Reserve Bank of New York. Historical series for the rate on adjustment credit as well as the rate on primary credit are available at www.federalreserve.gov/releases/h15/data.htm.

9. Yields on actively traded non-inflation-indexed issues adjusted to constant maturities. The 30-year Treasury constant maturity series was discontinued on February 18, 2002, and reintroduced on February 9, 2006. From February 18, 2002, to February 9, 2006, the U.S. Treasury published a factor for adjusting the daily nominal 20-year constant maturity in order to estimate a 30-year nominal rate. The historical adjustment factor can be found at www.treasury.gov/resource-center/data-chart-center/interest-rates/. Source: U.S. Treasury.

10. Yields on Treasury inflation protected securities (TIPS) adjusted to constant maturities. Source: U.S. Treasury. Additional information on both nominal and inflation-indexed yields may be found at www.treasury.gov/resource-center/data-chart-center/interest-rates/.

11. Based on the unweighted average bid yields for all TIPS with remaining terms to maturity of more than 10 years.

Note: Current and historical H.15 data, along with weekly, monthly, and annual averages, are available on the Board's Data Download Program (DDP) at www.federalreserve.gov/datadownload/Choose.aspx?rel=H15). Weekly, monthly and annual rates are averages of business days unless otherwise noted.

Description of the Treasury Nominal and Inflation-Indexed Constant Maturity Series

Yields on Treasury nominal securities at "constant maturity" are interpolated by the U.S. Treasury from the daily yield curve for non-inflation-indexed Treasury securities. This curve, which relates the yield on a security to its time to maturity, is based on the closing market bid yields on actively traded Treasury securities in the over-the-counter market. These market yields are calculated from composites of quotations obtained by the Federal Reserve Bank of New York. The constant maturity yield values are read from the yield curve at fixed maturities, currently 1, 3, and 6 months and 1, 2, 3, 5, 7, 10, 20, and 30 years. This method provides a yield for a 10-year maturity, for example, even if no outstanding security has exactly 10 years remaining to maturity. Similarly, yields on inflation-indexed securities at "constant maturity" are interpolated from the daily yield curve for Treasury inflation protected securities in the over-the-counter market. The inflation-indexed constant maturity yields are read from this yield curve at fixed maturities, currently 5, 7, 10, 20, and 30 years.

Last Update: June 09, 2017